UNITED STATES of America,
Plaintiff-Appellee,

v.

James E. FIFE, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Alvin KLEIN, Defendant-Appellant.

Nos. 76–1366, 76–1367.

United States Court of Appeals,
Sixth Circuit.

Decided Dec. 21, 1976.

Thomas A. Livingston, Livingston, Miller, O'Malley & Clark, Dennis J. Clark, Pittsburgh, Pa., John Tim McCall, Louisville, Ky., for defendants-appellants.

George J. Long, U. S. Atty., Louisville, Ky., Michael J. Remington, c/o T. George Gilinsky, Washington, D. C., Carl L. Lopresti, Newark, N. J., Shirley Baccus-Lobel, Asst. U. S. Attys., Dallas, Tex., John H. Foote, Washington, D. C., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, McCREE and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

The appellants, Fife and Klein, were indicted by a grand jury of the Western District of Kentucky for conspiring to travel in interstate commerce for the purpose of committing arson and of conspiring to use the mails to defraud. They were also indicted in six substantive counts charging violations of 18 U.S.C. § 1952, interstate travel for the purpose of committing arson, and eight substantive counts of violating 18 U.S.C. § 1341, use of the mails to defraud. Both appellants were convicted of the conspiracy charge and three substantive counts of interstate travel to commit arson as well as charges of mail fraud. A co-defendant, Ivan Marra, pled guilty during the trial to the conspiracy count and one substantive count of interstate travel to commit arson.

Each appellant was sentenced to serve five years on count one, the conspiracy count, and five years on one of the substantive counts, to be served consecutively to the conspiracy sentence; each was sentenced to serve concurrent sentences on the remaining substantive counts.

A building in Louisville, Kentucky in which the appellant Klein had a financial interest burned on May 4, 1970. There was abundant evidence of arson. The building was insured against loss by fire by the Hartford Insurance Group, and Klein eventually received $160,000 from Hartford in settlement of the fire claim. The co-defendant Marra made a claim against Fireman's Fund Insurance Company for loss to the contents of the building under a policy he had obtained upon representation to Fireman's Fund that he was conducting a plastics business as lessee of the building. The evidence disclosed that Marra had moved some materials into the building to give the impression that a business was being conducted, but that actually this was not the case. Fireman's Fund never paid Marra on his claim. The arrangements for the fire and the actual setting thereof involved trips between Pennsylvania and Kentucky by the defendants and others acting in concert with them, and the mails were used in filing loss claims with the insurance companies. Neither appellant questions the sufficiency of the evidence.

### APPEAL OF ALVIN KLEIN
### (No. 76–1367)

Klein made a motion under Rule 6(e), Fed.R.Crim.P., for production of the grand jury minutes, charging that the indicting grand jury had not heard witnesses, but had actually only been "briefed" by government agents concerning evidence which had been presented to an earlier grand jury in the Western District of Pennsylvania. Following denial of this motion Klein requested the district court to conduct an *in camera* examination of the Kentucky grand jury transcript. Seeking to distinguish *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), and this court's

decision in *United States v. Hoffa,* 349 F.2d 20 (1965), *aff'd,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), he argues that it is his contention that there was no evidence presented to the indicting grand jury, not that the evidence presented to the grand jury was hearsay or otherwise incompetent. He concedes that a motion under Rule 6(e) is addressed to the sound discretion of the trial judge, but maintains that there was an abuse of discretion in denying the motion in this case.

The Court of Appeals for the Second Circuit reversed a conviction and dismissed an indictment where a witness before a grand jury testified extensively about a drug transaction and the grand jury was not informed that the testimony was based on hearsay and was misled to believe that the witness was testifying from personal knowledge. *United States v. Estepa,* 471 F.2d 1132 (2d Cir. 1972). Thereafter the Second Circuit held that when it appears that a grand jury had heard only hearsay testimony, on motion, the district judge should examine the grand jury minutes *in camera. United States v. Ramirez,* 482 F.2d 807 (2d Cir.), *cert. denied sub nom. Gomez v. United States,* 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 475 (1973). Both *Estepa* and *Ramirez* were addressed to a practice of the United States Attorney's Office for the Southern District of New York from which the court concluded that grand juries were being misled by the use of hearsay witnesses rather than eyewitnesses and that in some cases there was a high probability that the grand juries would not have returned indictments if eyewitness testimony had been presented. It is not contended that such a situation existed in the present case.

■ The requirement of Rule 6(e) is that the defendant must make "a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." In the absence of such a showing, the proceedings of a grand jury are required to be kept secret. *United States v. Wilkinson,* 513 F.2d 227 (7th Cir. 1975); *Truchinski v. United States,* 393 F.2d 627 (8th Cir.), *cert. denied,* 393 U.S. 831, 89 S.Ct. 104, 21 L.Ed.2d 103 (1968).

■ In his motion before the district court counsel for the defendant Klein stated that it was his "understanding" that the grand jury which had returned the indictment was not the grand jury which had heard the witnesses in the case. This was a mere conclusion of the defendant without any factual support. Actually the chief witness for the government testified twice at the trial that he had appeared before the grand jury in Louisville. We conclude that the defendant made no showing of the existence of grounds for a motion to dismiss the indictment and that the district court did not abuse its discretion in denying the motion. *United States v. Barnes,* 313 F.2d 325, 326 (6th Cir. 1963).

Klein next contends that count one (conspiracy) and count three (interstate travel for the purpose of committing arson) of the indictment charged him with identical offenses and that the counts therefore merged, precluding separate punishment on the two counts. Count three charged that Klein caused travel in interstate commerce by one of the actual arsonists and he maintains that this is precisely the same as one of the overt acts with which he is charged under count one. The government argues that Klein's contention is undercut by the settled principle that a person may be convicted both of a substantive offense and a conspiracy to commit the same substantive offense.

The test for determining if an indictment charges one offense or separate offenses was established by the Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In *Iannelli v. United States,* 420 U.S. 770, 785, 95 S.Ct. 1284, 1294, 43 L.Ed.2d 616 (1975), the Court pointed out that there may be a "substantial overlap" in the proof offered to support two charges but that the *Blockburger* test is satisfied so long as "each provision requires proof of a fact that the other does not. . . ." In *United States v. Austin,* 529 F.2d 559 (6th Cir. 1976), the indictment was drawn in such a way that

the substantive offenses "in effect charged the same agreement or concert of action . . ." involving the defendant and other persons as was charged in the conspiracy count. Under these circumstances we held that there was a merger of offenses. The indictment in the present case is not drawn in the same way as the indictment which the court considered in *Austin.*

 Of course the essence of a conspiracy is an agreement to commit an offense. A conviction under count one required proof of an agreement. Count three, on the other hand, charged interstate travel and causing interstate travel by the arsonist. The fact that the offenses charged in the substantive counts all related to a single event which was the ultimate purpose of the conspiracy is immaterial. The substantive offenses do not require an agreement whereas the conspiracy does. There may be conviction and punishment both for a conspiracy and for aiding and abetting in commission of a substantive offense so long as the "separate offense" test of *Blockburger* is met. *Pereira v. United States,* 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954). Essentially the same arguments as those made by Klein in this case were considered by the court in *United States v. Bradley,* 421 F.2d 924, 927–28 (6th Cir. 1970), where the court stated:

> The commission of a substantive offense and a conspiracy to commit it are separate and distinct crimes, and a plea of double jeopardy does not arise on a conviction for both. *Pinkerton v. United States,* 328 U.S. 640, 643, 644, 66 S.Ct. 1180, 90 L.Ed. 1489; *Pereira v. United States,* 347 U.S. 1, 11, 74 S.Ct. 358, 98 L.Ed. 435 (1953); *Callanan v. United States,* 364 U.S. 587, 590, 81 S.Ct. 321, 5 L.Ed.2d 312 (1960). Neither does a conviction for a substantive offense in any way merge a conspiracy charge into the substantive crime. *Callanan v. United States, supra,* 364 U.S. at 587, 81 S.Ct. 321. In *Pereira, supra,* 347 U.S., at 11, 74 S.Ct. 358, the Court specifically held that aiding and abetting, under the facts of that case, was a separate crime from conspiring. We can find no meaningful distinction in the facts presented here.

 The other issues raised by Klein do not require extended treatment. He contends that it was an abuse of discretion for the district court to exclude evidence that he had submitted to a polygraph test and that Hartford had relied upon it in settling his insurance claim. This court has recently reiterated its position that the result of a polygraph test is not competent evidence. *United States v. Mayes,* 512 F.2d 637 (6th Cir.), *cert. denied,* 422 U.S. 1008, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975) and *sub nom. Cook v. United States,* 423 U.S. 840, 96 S.Ct. 69, 46 L.Ed.2d 59 (1975). Since polygraph evidence itself would have been incompetent, there was no abuse of discretion in excluding testimony that a polygraph test had been taken. Klein contends further that the district court committed prejudicial error in admitting testimony that the occupation of Merrill Klein (no relation to appellant) was that of "arsonist." His argument on this point seems basically concerned with the fact that the District Judge ruled similar evidence inadmissible at an earlier stage of the proceedings. However, at the time the evidence was admitted there had been a great deal of testimony concerning arson and the identification of Merrill Klein as an arsonist was clearly relevant. Appellant Klein also contends that the district court erred in admitting a letter in evidence which had been written by a government witness to himself setting forth the details of the conspiracy. *United States v. Walsh,* 305 F.2d 821 (6th Cir.), *cert. denied,* 371 U.S. 876, 83 S.Ct. 146, 9 L.Ed.2d 114 (1962), cited by Klein is inapposite. The decision to admit or exclude evidence is within the discretion of the trial judge and we perceive no abuse of discretion in the rulings complained of.

### APPEAL OF JAMES E. FIFE
### (No. 76–1366)

Appellant Fife argues that he was prejudiced by the fact that a co-defendant, Ivan Marra, pled guilty during the trial and that the court advised the jury of this occur-

rence. Upon first receiving the guilty plea of Marra the court merely advised the jury that something had transpired which made it no longer necessary for Marra and his counsel to be present and that he was no longer involved in the case. Thereafter, counsel for appellant Klein requested the court to instruct the jury of the reason for Marra's withdrawal. Counsel for Fife objected and moved for a mistrial when the court announced that the jury would be informed and instructed that no inferences could be drawn from Marra's guilty plea in their consideration of the charges against Klein and Fife. The court did then advise the jury of Marra's guilty plea and gave a comprehensive instruction that the jury should draw no inferences with respect to the case against the remaining defendants and that the guilty plea would in no way influence them in the decision which they would be required to make with respect to the other two defendants.

Fife relies primarily upon *Payton v. United States,* 96 U.S.App.D.C. 1, 222 F.2d 794 (1955), in which it was held prejudicial error for the court to receive a guilty plea in the presence of the jury and then emphasize this fact as the trial proceeded. The court of appeals pointed out that it was particularly prejudicial because the evidence showed a close association between the co-defendant who had pled guilty and the defendant whose trial continued. So far as may be ascertained from reading the reported decision, the trial court in *Payton* did not give a corrective instruction to the jury as was done in the present case. In *United States v. Kimbrew,* 380 F.2d 538 (6th Cir. 1967), the court held that it was not error to permit a co-defendant to change his plea from not guilty to guilty in the presence of the jury, though the reviewing court must be sensitive to any aggravating circumstances. In *Kimbrew* there was no request for a corrective instruction and the conviction was affirmed.

Fife argues that there were aggravating circumstances in the present case in that testimony had linked Marra and Fife as business associates and they had been described as being together about one week before the fire. On the other hand, we do not have the aggravating circumstance found in *Payton* of several references by the court to the guilty plea without instructing the jury that it was not to draw any inferences from this development. We believe the Fifth Circuit articulated the proper test in *United States v. Baete,* 414 F.2d 782, 783 (1969), where it stated that in cases such as this the appellate court should focus its attention carefully on "the sufficiency of the corrective instruction." This test is particularly applicable in the present case where one of the remaining codefendants requested the court to advise the jury of the guilty plea and the other objected. We have carefully examined the corrective instruction given by District Judge Bratcher and conclude that it was sufficient to remove any prejudice which might otherwise have flowed from the jury's knowledge of Marra's guilty plea.

Prior to trial, appellant Fife made a motion pursuant to Rule 16(c), Fed.R. Crim.P., for production of all documents and other tangible items in the possession, custody or control of the government which might be material to the preparation of the defense. This motion was granted, but the documents disclosed to the defendants did not include a bank signature card with reference to a deposit in a Cleveland, Ohio bank in the name of Marra Industries. An officer of the Cleveland bank appeared pursuant to a government subpoena and brought with him bank deposit statements and a signature card for the account of Marra Industries bearing the signatures of Ivan Marra and the appellant Fife. Fife objected to production of the signature card on the ground that the government had not produced it in compliance with the order under Rule 16. The court excluded the signature card at that time. When the witness was recalled later, the court permitted the signature card to be received in evidence. At this time the attorney for the government pointed out that copies of the card had been made available to the defense two days earlier.

Fife argues that so long as the bank official was only permitted to testify that the account has been opened the jury did not know that he, Fife, had any connection with the bank account, and that it was prejudicial to reveal this fact through admission of the signature card which had not been furnished prior to trial. We fail to see prejudice in the ruling of the trial court. Fife never denied that he was associated with Marra, but insisted that he made an investment in Marra Industries thinking that it was a legitimate business enterprise. Furthermore, there was direct evidence of Fife's association with Marra in addition to the fact that both had signed the signature card. There was no reversible error in the district court's handling of this matter.

Fife contends that his Sixth Amendment right to confront witnesses against him was infringed by the limitations which the district court placed on his cross-examination of the government witness, Joseph Laverich. Laverich was the only witness who implicated Fife in the burning of the bakery building, and Fife denied any involvement. Thus the jury had to make a credibility determination with respect to conflicting testimony of Fife and Laverich. *Cf. Smith v. Illinois,* 390 U.S. 129, 131, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968). Fife argues that his cross-examination of Laverich was improperly restricted in two respects.

At the beginning of the trial, counsel for Fife requested an FBI "rap sheet" on Laverich. The government attorneys reported to Fife's counsel that it had been learned through a telephone call to Washington that the FBI did not have a rap sheet on the witness. Defense counsel was informed that the witness had two misdemeanor convictions, but no felony convictions. Near the end of cross-examination of Laverich by counsel for Fife one of the prosecuting attorneys informed counsel and the court that a second telephone call to Washington had produced the fact that a rap sheet on Laverich was in existence. The government attorney had a handwritten copy of the contents of the rap sheet and this was shown to the District Judge and Laverich in chambers. Counsel for Fife was permitted to ask Laverich about each item on the handwritten sheet out of the presence of the jury. Laverich stated that he had not been convicted of a felony within ten years of the time of trial and that he was found innocent by a jury of a charge of attempted murder which was shown on the handwritten sheet. Counsel for Fife did not cross-examine Laverich further in the presence of the jury.

Prior to the above proceedings counsel for Fife had attempted to cross-examine Laverich extensively about the attempted murder charge upon which he had been acquitted. The district court sustained objections to such questions and counsel stated that he believed the Department of Justice Strike Force attorneys had assisted Laverich in winning an acquittal in the attempted murder case in order to induce him to testify against Fife in the present case. Counsel admitted that he had no information to this effect, but wanted to attempt to develop this theory. The district court permitted Fife's attorney to introduce a memorandum of understanding between Laverich and the prosecuting attorneys and required Laverich to read this memorandum to the jury. Laverich testified that he received immunity and was not named as a defendant in the case against Klein, Marra and Fife.

Fife was not prejudiced by the delay of the government in producing the "rap sheet." Furthermore, the District Judge did not abuse his discretion in sustaining objections to questions concerning a charge on which Laverich had been acquitted by a jury. This case is totally unlike *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 743, 31 L.Ed.2d 104 (1972), where the prosecution failed to disclose to the jury the fact that the government had made a promise of leniency in return for the testimony of a key witness. The jury was fully informed as to arrangements between Laverich and the government, and Fife's attorney was free to argue inferences from the known facts. However, counsel for Fife was not entitled to harass the witness with

questions about a serious charge upon which a jury had acquitted him, based on counsel's personal theory of an illegal agreement between the government and Laverich which is totally unsupported by the record.

The second, and more serious charge of prejudicial limitation of cross-examination relates to the residence address of Laverich. On direct examination Laverich testified that he lived in a residence in Greensburg, Pennsylvania and had lived there for two years at the time of the trial. The prosecuting attorney objected when counsel for Fife on cross-examination asked the residence address of Laverich in Greensburg, Pennsylvania, and the court sustained the objection. Immediately thereafter there was a bench conference at which counsel for Fife said that he needed the information to develop his cross-examination and for further investigation of Laverich. The government attorney stated, "This witness is apprehensive to tell it." The district court stated that he did not want to contribute to the apprehension of the witness and that the name of the town where Laverich resided should be sufficient for cross-examination and investigation.

Counsel for Fife then conducted a detailed cross-examination during which Laverich testified that he was not in custody at the time of the trial, that he had participated in the burning of a hotel in Pennsylvania in 1968 or 1969 and in another arson case in Pittsburgh after the fire in Louisville. Furthermore, he testified that he had "burglarized places." He testified that he was employed at the time of the trial as a building contractor in Greensburg, Pennsylvania and that he had previously done work in electronics. During the conference between the court and counsel after the "rap sheet" information was produced, Laverich stated under oath that the population of Greensburg, Pennsylvania is about 15,000.

Fife relies principally on *Alford v. United States,* 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931), and *Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748, 91 L.Ed.2d 956 (1968).

*Alford* establishes the rule that counsel for a defendant is not required to show, or even know, what he expects to prove on cross-examination. Cross-examination, particularly where the purpose is to disclose bias or prejudice on the part of a witness, is necessarily of an exploratory nature. The Supreme Court held that it was error for a trial court to sustain an objection to a cross-examiner's question seeking to elicit the address of a government witness in a criminal prosecution. Mr. Justice Stone wrote for the Court, "Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise him." 282 U.S. at 692, 51 S.Ct. at 219.

In *Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748, 91 L.Ed.2d 956 (1968), a government witness admitted on cross-examination that he had given a fictitious name on direct examination. The trial court sustained objections to cross-examination questions concerning his real name and his residence address at the time of the trial. Pointing out that the identity and residence of a witness are basic information the Court stated, "The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself." *Id.* at 131, 88 S.Ct. at 750. The present case is distinguishable in some respects from *Smith v. Illinois* in that the witness gave his true name, the town where he lived and worked and his occupation.

The mere expression of apprehension by a witness who is reluctant to divulge his address is not sufficient justification for restricting cross-examination without further inquiry. An *in camera* hearing might be held to determine if there is a factual basis for such apprehension. The district court should have conducted such an inquiry in the present case. However, information which was brought out in the otherwise unrestricted cross-examination of

Laverich revealed that he had lived in a town of approximately 15,000 population for a period of at least two years where he was engaged as a self-employed building contractor. Thus the only information the witness was allowed to withhold was his street address in a relatively small community.

Though convictions were reversed by the Supreme Court both in *Alford v. United States* and *Smith v. Illinois,* the Court did not lay down a *per se* rule that a witness must always be required to give his residence address. In *Alford* the Court affirmed that the extent of cross-examination with respect to any permitted subject is always within the sound discretion of the trial court. 282 U.S. at 694, 51 S.Ct. 218. We believe that under the circumstances of this case, counsel for Fife had the opportunity "to place the witness in his proper setting . . . ." *Id.,* at 692, 51 S.Ct. at 219. As the court pointed out in *United States v. Alston,* 460 F.2d 48, 51 (5th Cir.), *cert. denied,* 409 U.S. 871, 93 S.Ct. 200, 34 L.Ed.2d 122 (1972), the purpose of *Alford* and *Smith* is achieved if sufficient evidence is admitted to identify the witness and locate him in his usual environment. The cross-examination which was permitted in the present case produced this information.

■ The critical importance of cross-examination in our adversary system of justice has been affirmed many times. The necessity of permitting great latitude in cross-examination where the purpose is to show bias or motive of a witness to testify falsely has been recently reiterated by the Supreme Court and this court. *See Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *United States v. Garrett,* 542 F.2d 23 (6th Cir. 1976); *United States v. Baker,* 494 F.2d 1262 (6th Cir. 1974). However, an examination of the entire transcript of the testimony of Laverich reveals an extensive and productive cross-examination, and we conclude that the district court did not commit prejudicial error.

Both judgments of conviction are affirmed.