Dennis M. WOLFEL, Plaintiff-Appellee,

v.

Troy E. HOLBROOK,
Defendant-Appellant.

No. 86–3068.

United States Court of Appeals,
Sixth Circuit.

Argued March 20, 1987.

Decided July 21, 1987.

Rehearing and Rehearing En Banc
Denied Aug. 26, 1987.

971

Before KRUPANSKY and BOGGS,
Circuit Judges, and EDWARDS, Senior
Circuit Judge.

KRUPANSKY, Circuit Judge.

Defendant-appellant Troy E. Holbrook (Holbrook) appealed from a judgment in favor of plaintiff Dennis M. Wolfel (Wolfel) entered pursuant to a jury verdict in this action initiated pursuant to 42 U.S.C. § 1983.

Wolfel was a prisoner at the Southern Ohio Correctional Facility (SOCF) in Lucasville, Ohio. At all times relevant to the present litigation, Wolfel was housed in the disciplinary control unit in the J–2 cell block at SOCF. On October 15, 1982, Wolfel attended a disciplinary hearing and was escorted back to his cell by corrections officers Holbrook and Frank Williams (Williams).

On October 16, 1982, following the conclusion of Holbrook's shift, Wolfel sought medical attention for an injury to his ankle. Wolfel reported that the injury had resulted from a beating that had been administered by a prison guard. However, at the time he initially reported the incident, Wolfel did not identify the guard who had allegedly injured him.

Upon being advised of Wolfel's allegations, Superintendent Ronald C. Marshall (Marshall) convened a special committee to investigate Wolfel's charges. As part of the investigation, Wolfel was interviewed and reported that, on October 15, 1982, Holbrook kicked and beat him in his prison cell. Wolfel further stated that Williams witnessed the incident from outside of the cell. Wolfel volunteered to submit to a polygraph examination concerning the alleged incident and was transported to the Ohio State Highway Patrol headquarters in Columbus for that purpose. Prior to the administration of the polygraph test, there had been no agreement concluded between Wolfel and his adversaries authorizing the results of the examination to be used as evidence in any future litigation that could arise as a result of the alleged incident. Sergeant Arthur Reitz (Reitz) of the state highway patrol administered Wolfel's poly-

Michael E. Geltner (argued), Washington, D.C., for plaintiff-appellee.

Joseph M. Mancini (argued), Asst. Atty. Gen., Columbus, Ohio, for defendant-appellant.

graph test. Because Wolfel refused to answer two control questions, the results of the examination were inconclusive since Reitz was unable to formulate any opinion as to the truthfulness of Wolfel's responses to questions concerning the incident alleged to have occurred on October 15, 1982.

Holbrook and Williams were also interviewed about the alleged beating. Both officers denied that any beating had occurred and did not volunteer to submit to a polygraph examination.

After completing its investigation, the special investigating committee determined that Wolfel's allegations were without merit. Thereafter, Wolfel filed this § 1983 action in federal district court, alleging that Holbrook had beaten him in his prison cell in violation of his Eighth and Fourteenth Amendment rights.

Holbrook filed a written motion *in limine* seeking to exclude as evidence any testimony related to the polygraph examinations. During a hearing on Holbrook's motion, counsel for Holbrook informed the trial court (1) that there had been no agreement between the parties to permit the results of Wolfel's polygraph examination to be used as evidence in this litigation; (2) that Wolfel had refused to answer two control questions at the inception of the polygraph inquiry; and (3) that. because Wolfel had refused to respond to the control questions, the results of the test were inconclusive. Although it was apparent at this juncture of the proceedings that the polygraph examination was inconclusive and irrelevant as probative evidence, the trial court, nevertheless, reserved its ruling on defendant's motion in limine until such time as the evidence was presented within the context of the trial.

At trial, the district judge, fully aware of Wolfel's refusal to answer the control questions necessary to validate the polygraph examination and the inconclusiveness of its results, permitted Wolfel to testify, over defense objections, (1) that he had volunteered to submit to polygraph examination, and (2) that he did, in fact, submit to a polygraph examination. In addition, the trial court also permitted Wolfel

to develop testimony from Williams that he had not submitted to a polygraph examination. The jury returned a verdict in favor of Wolfel, awarding him $20,000 in compensatory damages and $5,000 in punitive damages.

Holbrook filed a motion for new trial, wherein he argued that it was error to admit any evidence concerning the polygraph examinations. The district court denied the motion for new trial and this appeal followed.

On appeal, Holbrook charged that the trial court erred in (1) permitting Wolfel to testify that he volunteered to submit to and did in fact submit to a polygraph examination; and (2) permitting Wolfel to interrogate Williams concerning his refusal to volunteer to submit to a polygraph examination.

■■■ Generally, in the absence of an agreement and/or stipulation between the parties to the contrary, results of polygraph examinations are inadmissible into evidence. *See, e.g., Barnier v. Szentmiklosi*, 810 F.2d 594, 597 (6th Cir.1987); *United States v. Murray*, 784 F.2d 188 (6th Cir.1986); *Poole v. Perini*, 659 F.2d 730, 735 (6th Cir.1981), *cert. denied*, 455 U.S. 910, 102 S.Ct. 1259, 71 L.Ed.2d 450 (1982). However, in limited circumstances, evidence of a party's willingness to submit to a polygraph may, within the discretion of the trial court, become admissible if it is relevant to the proof developed by the probative evidence. *Murphy v. Cincinnati Ins. Co.*, 772 F.2d 273 (6th Cir.1985). In considering the admissibility of polygraph related evidence, this circuit has decreed a two step analysis. First, the trial court must determine if the proffered evidence is relevant. Second, if the court concludes that the proffered evidence is relevant, it must balance the probative value of the evidence against the hazard of unfair prejudice and/or confusion which could mislead the jury. Fed.R.Evid. 403; *Barnier*, 810 F.2d at 597; *Murphy*, 772 F.2d at 277.

In *Murphy v. Cincinnati Ins. Co.*, 772 F.2d 273 (6th Cir.1985), the plaintiff James Murphy (Murphy) presented a fire loss claim to the defendant insurer after his

home had been destroyed by a fire. Because the local fire department had concluded that the fire had been caused by arson, the defendant insurer initiated an investigation to determine if Murphy had intentionally destroyed his residence. Murphy had cooperated in the fire department's arson investigation and agreed to cooperate fully in the insurer's investigation. Within one month after he had filed his insurance claim and prior to the initiation of any litigation, Murphy voluntarily submitted to a deposition conducted on behalf of the insurer. During the course of that deposition and upon the inquiry of the insurer, Murphy agreed to undergo a polygraph examination to be arranged by the insurer with the understanding that the results of that examination would be dispositive in deciding the validity of his fire loss claim. Murphy, however, was never requested to submit to the test because the insurer summarily denied his claim eight days after his deposition.

Murphy initiated an action in federal district court in which he sought compensation for his fire loss and attorneys fees incurred as a result of the insurer's bad faith refusal to pay his claim. At trial, Murphy was permitted to testify as to his willingness to submit to a polygraph test.[1] This circuit upheld the trial court's decision to admit the testimony, noting that Murphy's "willingness to cooperate in an insurance company's investigation and request for a polygraph examination" was probative of both "his credibility *and* the defendant's motive in refusing the claim." 772 F.2d at 277 (emphasis added). Given the wide latitude of cross-examination to which Murphy had been subjected, this circuit concluded that the district court did not abuse its discretion in concluding that the probative value of demonstrating the full extent of Murphy's willingness to cooperate in the insurer's arson investigation was not substantially outweighed by the danger of unfair prejudice.

Similarly, in *Barnier v. Szentmiklosi*, 810 F.2d 594 (6th Cir.1987), this circuit again weighed probative value against prejudicial effect in considering the admissibility of polygraph related evidence. In *Barnier*, the plaintiffs had been charged with a criminal assault and battery in connection with an incident in which they had allegedly interfered with the arrest of their son. On advice of their legal counsel, the Barniers privately arranged for and submitted to a polygraph examination concerning the alleged assault and battery. They had not informed the prosecution of their private arrangement. The assault and battery charges were ultimately dismissed on the prosecutor's motion before trial.

The Barniers thereafter initiated an action for malicious prosecution, naming as defendants the officers involved in the incident and the city. The trial court permitted the plaintiffs to testify that they had submitted to a polygraph examination. This circuit concluded that the trial court had erred in admitting evidence concerning the polygraph examination:

> This repetitive line of questioning clearly gave rise to the inference that the prosecutor dropped the charges because of the results of the lie detector test. More importantly, this testimony implied that the test demonstrated that the Barniers' story was true. Using evidence of a lie detector test in this manner with the effect of bolstering the Barniers' credibility was highly prejudicial, particularly since the entire case hinged on whether the jury believed the Barniers' version of the facts and the burden cast was on the plaintiff. The verdicts rendered for defendants on other claims of misconduct and wrongful activity arising out of the confrontation in controversy indicate that the version of events claimed by the plaintiff and her family were not otherwise accepted by the jury.

> The purported use of this evidence for the purpose of showing damages was dubious at best, because the Barniers

---

**1.** In *Murphy*, the plaintiff's testimony was limited to the fact that he had been willing to take a polygraph test. Murphy never was required to submit to the test because the insurer had not

made the arrangements to implement its request. Thus, there was no inquiry concerning the examination and its results, since the issue was never joined.

voluntarily submitted to the polygraph test at the advice of their own counsel, not at the request of the prosecution or these defendants. Defendants and their counsel did not even know the test was being taken, let alone encourage or agree to a polygraph test. *We doubt that the Barniers would volunteer to take the test unless for the purpose of reporting its results to the prosecutor if the results were deemed by their attorney to be favorable. If unfavorable, presumably the results would not have been revealed.* To claim that defendants were somehow responsible for the emotional stress the test caused them under these circumstances is questionable in our view. We have difficulty seeing the causation between the voluntary submission to the test and any damages attributable to defendants. In sum, we doubt that the evidence of the polygraph was properly admissible for any purpose, and the repeated line of questioning implying that the polygraph supported the Barniers' credibility far outweighed in prejudice the dubious probative value on the damages issue. The district court should not have admitted this evidence under Federal Rule of Evidence 403. *See United States v. Ridling*, 350 F.Supp. 90, 95 (E.D.Mich.1972) ("The Court must always be alert to prevent the use of evidence that has marginal utility in the process of truth seeking if it is of such a nature so as to over-impress the jury.") *Barnier*, 810 F.2d at 597 (emphasis added).

■ Wolfel argued that the district court was required to admit evidence concerning his polygraph examination under this circuit's decision in *Murphy*. However, *Murphy* is easily distinguished from the present case, and this court concludes that the trial court erred in admitting evidence related to Wolfel's polygraph examination.

In *Murphy*, this court determined that the evidence of plaintiff's cooperation in the insurer's arson investigation was relevant not only as to his credibility as a witness but also to reflect upon the substantive issue of the insurer's bad faith in disallowing Murphy's claim. The fact that Murphy had agreed to submit to a binding polygraph examination at the insurer's request, coupled with the insurer's failure to conduct any polygraph test prior to its summary denial of Murphy's claim, reflected upon the unreasonableness of the insurer's actions. Because the evidence was relevant to the substantive issue of the insurer's bad faith, this circuit concluded that the district court did not abuse its discretion in determining that the potential for prejudice inherent in polygraph related evidence did not substantially outweigh its probative value.

In contrast, in the present case, Wolfel's willingness to submit to polygraph examination was offered for the sole purpose of supporting his credibility. While willingness to submit to polygraph testing may, in some instances, be relevant to credibility, the circumstances of this case reflect that the relevance of Wolfel's "willingness" to submit to the test was marginal, at best. First, there was no agreement or stipulation between the parties that the results of the examination, whatever they might reflect, would be admissible in subsequent litigation and hence, Wolfel had no adverse interest at stake to cloak his willingness with credibility. *Cf. Barnier*, 810 F.2d at 597 ("If unfavorable, presumably the results would not have been revealed.") Second, Wolfel's refusal to respond to control questions negated his offer to submit to the test because it induced inconclusive results.

■ This court concludes that the trial court also erred when it permitted Wolfel to interrogate Williams concerning his refusal to submit to a polygraph examination. The marginal relevance of his refusal to submit to polygraph testing was outweighed by its prejudicial effect. Given the general skepticism that pervades the scientific community concerning the reliability of polygraph examination, an individual's refusal to submit to a polygraph test may be more probative of skepticism than lack of credibility. Moreover, since an individual's refusal to volunteer for polygraph testing is likely to create a highly prejudicial inference that the results of the test

would have been unfavorable, such evidence must be excluded.

Accordingly, this court concludes (1) that this case is factually distinguishable from *Murphy;* (2) that Wolfel had no adverse interest at stake to cloak his willingness to submit to the test with credibility because there was no pre-examination agreement in place waiving any objections to the admissibility of the results as evidence in subsequent litigation; (3) that any probative value which may have attached to Wolfel's initial willingness to submit to the test was subsequently negated when he refused to answer control questions; (4) that Williams's refusal to volunteer to submit to a polygraph examination was highly prejudicial and not probative of the substantive issues in this case; and (5) that the prejudice arising from the admitted polygraph evidence, taken in its entirety, outweighed any probative value it may have had in the first instance.

For the reasons stated above, the judgment of the trial court is REVERSED and the matter is REMANDED for further proceedings not inconsistent with this decision.