## In re GRAND JURY INVESTIGATION.

### (Application of Lori KAPS–EISNAUGLE).

United States District Court,
S.D. Ohio, E.D.

May 12, 1992.

Robyn R. Jones, Asst. U.S. Atty., Columbus, Ohio, for The Government.

David F. Axelrod, Columbus, Ohio for Lori Kaps–Eisnaugle.

## ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court upon an Emergency *Ex Parte* Application for Payment Authorization Pursuant to Criminal Justice Act, and Motion to Seal of Lori Kaps–Eisnaugle.

Kaps–Eisnaugle has been identified as the subject of a grand jury investigation regarding the importation of approximately 700 grams of cocaine into the United States on or about April 2 and 3, 1992.

## LAW AND ANALYSIS

■ Counsel for Kaps–Eisnaugle brings this application pursuant to 18 U.S.C. § 3006A(e)(1) which provides:

**(e) Services other than counsel—**

**(1) Upon request.**—Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court, or the United States magistrate [judge] [1] if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services.

This provision, while applied quite often by the Court and criminal defense bar typically concerns itself with the appointment of experts set forth in Volume VII, *Guide to Judiciary Policies and Procedures: Appointments of Counsel in Criminal Cases.* Section 3.01(A) refers to "investigative, expert or other services necessary to adequate representation ..." that may be appointed by the Court. The only specific services mentioned are investigators (section 3.10), psychiatrists and psychologists (section 3.11), transcripts (section 3.12), fact witnesses and depositions (section 3.13), guardians ad litem (section 3.14), computer assisted legal research (section 3.15), and "other" [2] (section 3.16). Not found among the provisions for the several experts delineated in these guidelines is a contemplation for the administration of a polygraph test. Although this list need not . be all-inclusive, the failure of these guidelines to mention polygraph examinations suggests that these are not routinely funded and not ordinarily considered as "services necessary to adequate representation."

Further, in order to assure full and fair consideration of this extraordinary request for the expenditure of taxpayer funds, the Court has requested a response from the Government as to their position. In its response, the Government made clear their opposition to the submission of the results of a polygraph examination to the Grand Jury.

The Court is, frankly, perplexed at this unusual request as set forth by counsel in his Application. Counsel for Kaps–Eisnaugle seemingly wishes to establish his client's base veracity through a polygraph examination to bolster his attorney-client relationship with her and to enhance the

---

1. United States magistrates appointed under section 631 of Title 28, Judiciary and Judicial Procedure, have been known since December 1, 1990, as a United States magistrate judge.

2. "Other" includes "interpreters, neurologists, and laboratory experts in the area of ballistics, fingerprinting, handwriting, etc."

representation she receives. In his "emergency" request, counsel represents that it is possible that he may ultimately reveal the results of any such polygraph test "to the government in an attempt to avoid indictment...." Yet, in the same paragraph he suggests that these same results would be for the benefit of defense counsel and would be protected by attorney-client privilege.

Notwithstanding the lack of clarity on the part of counsel surrounding Kaps–Eisnaugle's Application, the law concerning this matter is clear.

■ As counsel for Kaps–Eisnaugle must surely realize, the grand jury process is closely related to the operations of the United States Attorney. Indeed, one Court has stated that, "[T]he grand jury is essentially controlled by the United States Attorney and is his prosecutorial tool." *Robert Hawthorne, Inc. v. Director of Internal Revenue*, 406 F.Supp. 1098, 1119 (D.C.Pa. 1976). While the results of lie detector tests have been found admissible in the grand jury process, *e.g.*, *U.S. v. Callahan*, 442 F.Supp. 1213 (D.C.Minn.1978), reversed on other grounds, 596 F.2d 759 (8th Cir. 1979); *U.S. v. Narciso*, 446 F.Supp. 252, 297–298 (D.C.Mich.1977), there is no guarantee that were a polygraph report to be available that it would be introduced by the Assistant United States Attorney to the grand jury.

■ While the determination as to the admissibility of a polygraph exam lies fully within the discretion of the Court, the overwhelming weight of the law in this Circuit has been against admission. *U.S. Barger*, 931 F.2d 359 (6th Cir.1991); *Wolfel v. Holbrook*, 823 F.2d 970, 972 (6th Cir.1987), *cert. denied*, 484 U.S. 1069, 108 S.Ct. 1035, 98 L.Ed.2d 999 (1988); *Barnier v. Szentmiklosi*, 810 F.2d 594, 597 (6th Cir.1987). Counsel, therefore, is requesting that the Court authorize payment for a polygraph examination that is unlikely to ultimately be admitted into evidence under the law.

In speaking to this very point, the United States Court of Appeals for the Seventh Circuit stated:

Defendant has challenged only the refusal to authorize the requested funds under the Criminal Justice Act of 1964, as amended, 18 U.S.C. § 3006A. He has not claimed that the results of a polygraph examination should have been admitted into evidence. If such evidence is deemed inadmissible, then the refusal of funds for such an examination would have been proper. If, however, special circumstances would appear to justify the use of the results of a polygraph examination, then, under the Act, *supra*, any such authorization would lie within the sound discretion of the district court. We find no abuse of such discretion in this case.

*United States v. Penick*, 496 F.2d 1105, 1110 (7th Cir.1974).

In exercising this discretion, the Court finds no basis for the authorization of such fees and shall not approve same.

### CONCLUSION

Based upon the foregoing, the Court does not find that the services requested by Kaps–Eisnaugle are necessary. Accordingly, the Court finds Kaps–Eisnaugle's Emergency *Ex Parte* Application for Authorization Pursuant to Criminal Justice Act, and Motion to Seal without merit and it is hereby DENIED.

IT IS SO ORDERED.