**UNITED STATES of America, Plaintiff,**

v.

**Chris WRIGHT, Defendant.**

No. 97–20179–D.

United States District Court,
W.D. Tennessee,
Western Division.

Sept. 22, 1998.

752

Doris A. Randle–Holt, Regina Stephenson, Federal Public Defender's Office, Memphis, TN, for Defendant.

Chris Wright, Memphis, TN, pro se.

Jennifer Lawrence Webber, U.S. Attorney's Office, Memphis, TN, for U.S.

## ORDER EXCLUDING POLYGRAPH EVIDENCE

DONALD, District Judge.

Before this court is the motion of Defendant Chris Wright to exclude the results of a polygraph test administered to the Defendant by the United States Attorney's Office for the Western District of Tennessee. Defendant contends that the results of the polygraph examination are unreliable and that he did not knowingly, intelligently and voluntarily waive his right to contest the admissibility of the results. On August 12, 1998, the United States Attorney's Office timely filed a response to Defendant's motion to exclude polygraph evidence. The government's response argues that Sixth Circuit legal precedent grants this court discretion to admit the results of the polygraph test and urges the court to exercise that discretion to allow admission of these results at trial. For the following reasons, the court grants Defendant's motion to exclude the polygraph evidence.

### FACTS

On October 6, 1993, the Wal–Mart Department Store, located at 3915 Austin Peay Highway in Memphis, Tennessee was destroyed by fire. (Indictment Count One).

Shortly after this fire, the Department of Alcohol, Tobacco and Firearms ("ATF") initiated an investigation of the circumstances surrounding the burning of the Wal–Mart store. (Govt.'s Resp. to Motion to Exclude ¶ 2). After Defendant Chris Wright became a suspect in the ATF's arson investigation, he retained Craig Morton ("Attorney Morton") as legal counsel for the duration of the investigation. (Govt.'s Resp. to Motion to Exclude ¶ 2)

Attorney Morton informed the United States Attorney's Office that Defendant was willing to submit to a polygraph examination as an attempt to demonstrate that Defendant was not involved in the burning of the Wal–Mart store. (Govt.'s Response to Motion to Exclude ¶ 3) In response to this offer, the United States Attorney agreed to coordinate and conduct a polygraph examination of Defendant on the condition that the results of the test would be admissible if the Defendant were indicted and the case proceeded to trial. (Govt.'s Response to Motion to Exclude ¶ 4). Both the United States and the Defendant agreed not to object to the admissibility of the polygraph examination provided the test complied with standards identified in a written agreement. (Stipulation at ¶¶ 4, 6).

The polygraph examination results indicated that Defendant had "lied in his responses to questions about the fire which destroyed the Wal–Mart store." (Govt.'s Response to Motion to Exclude ¶ 6). The United States now seeks to use the examination results to attack Defendant's credibility and as substantive evidence of the Defendant's guilt in burning the Wal–Mart store. (Govt.'s Motion to Exclude ¶ 6).

## DISCUSSION

Generally, the results of polygraph examinations are inadmissible at trial. *Wolfel v. Holbrook,* 823 F.2d 970, 973 (6th Cir. 1987), *cert. denied,* 484 U.S. 1069, 108 S.Ct. 1035, 98 L.Ed.2d 999(1988); *United States v. Barger,* 931 F.2d 359, 370 (6th Cir.1991); *United States v. Weiner,* 988 F.2d 629 (6th Cir.1993), *cert. denied,* 510 U.S. 848, 114 S.Ct. 142, 126 L.Ed.2d 105 (1993). Prior to *Wolfel,* the Sixth Circuit adhered to a per se rule prohibiting the introduction of any polygraph evidence at trial. *United States v. Fife,* 573 F.2d 369 (6th Cir.1976) *cert. denied,* 430 U.S. 933, 97 S.Ct. 1555, 51 L.Ed.2d 777 (1977); *United States v. Murray,* 784 F.2d 188 (6th Cir.1986). The Sixth Circuit considered all polygraph evidence to be incompetent and therefore not admissible at trial. *Fife* at 373. In *Wolfel,* the Court relaxed the per se rule to allow the admissibility of polygraph related evidence in those limited circumstances where "it is relevant to the proof developed by the probative evidence." *Wolfel* at 972; *See also United States v. Blakeney* 942 F.2d 1001, 1014 (6th Cir.1991). The Court proposed a two-step analysis to govern the admissibility of polygraph related evidence: 1) the trial court must determine the relevance of the proffered evidence, and 2) the court must balance the probative value of the evidence against the danger of unfair prejudice. *Wolfel* at 972.

Although trial courts have discretion to admit some polygraph related evidence, the general rule against the admission of polygraph examination results is ordinarily followed in cases where there has been no prior agreement and/or stipulation between the parties waiving all objections to the admissibility of the results. *Wolfel* at 972; *Conti v. C.I.R.,* 39 F.3d 658, 663 (6th Cir. 1994), *cert. denied,* 514 U.S. 1082, 115 S.Ct. 1793, 131 L.Ed.2d 722 (1995) (stating "unilaterally obtained polygraph evidence is almost never admissible under Evidence Rule 403."). Without such agreements, the person who submits to a polygraph examination does not have a sufficiently adverse interest in the examination to insure the probative value of the test results. *Id.* at 974–75. *See also United States v. Harris,* 9 F.3d 493, 502 (6th Cir.1993) (affirming the trial court's refusal to admit the results of a polygraph examination where the defendant had not entered into a prior agreement to allow the results to be admitted at trial). Where there are no safeguards to insure the reliability of a polygraph examination, the probative value of the examination is minimal and will be outweighed by the prejudicial effect of the results. *Conti* at 663. Accordingly, unilateral polygraph examinations are not generally used to prove the truth or falsity of a disput-

ed fact or even to bolster a witness's credibility. *Id.; United States v. Sherlin,* 67 F.3d 1208, 1216–17 (6th Cir.1995), *cert. denied* 516 U.S. 1082, 116 S.Ct. 795, 133 L.Ed.2d 744 (1996) *and cert. denied* 517 U.S. 1158, 116 S.Ct. 1548, 134 L.Ed.2d 650 (1996).

The United States acknowledges that evidence of polygraph examinations is not generally admissible, but argues that this case falls within the exception carved out by the Sixth Circuit for those cases in which both parties agree before the examination not to contest the admissibility of the results at trial. In the present case, the Defendant was the first party to propose that he submit to a polygraph examination. Moreover, the United States and the Defendant entered into a written stipulation that neither party would contest the admissibility of the examination's results at trial. Because the Defendant had an adverse interest in the polygraph examination, he had sufficient incentive to assure the reliability of the testing methods and procedures. Accordingly, the circumstances surrounding the Defendant's polygraph examination fall squarely within the exception to the general rule against the admission of polygraph evidence.

■ Nevertheless, whether a prior agreement concerning admissibility existed is not dispositive of whether Defendant's polygraph examination should be excluded from evidence. The exception recognized by the Sixth Circuit in *Wolfel* did not create a right to have polygraph evidence admitted whenever the United States and a defendant have entered into a pre-examination agreement waiving any objection to such evidence. *See also United States v. Scheffer,* 523 U.S. 303, ——, 118 S.Ct. 1261, 1267, 140 L.Ed.2d 413 (1998) (rejecting the proposition that the defendant had a constitutional right to introduce polygraph evidence). On the contrary, the exception created in *Wolfel* was merely a tool to relax the former per se rule barring the admission of polygraph evidence and allow the use of polygraph evidence in limited circumstances. Notwithstanding the exis-

tence of a pre-examination agreement, the trial court retains the discretion to exclude the results of polygraph examination under Federal Rule of Evidence 403.[1] The trial court is the final arbiter of the evidence which the jury will consider. The parties cannot pre-empt the court's gate keeping role through pretrial agreement. Accordingly, this court has the responsibility to make its own determination of whether the probative value of the polygraph examination results is outweighed by its prejudicial effect.

■ Because of the lack of consensus on the reliability of polygraphy in the scientific community, the court finds the probative value of polygraph examinations to be questionable and unreliable. Although some courts have become less reluctant to use the results of polygraph examinations due to advances in polygraph instrumentation and technique, questions continue to abound about the reliability of polygraphy. *Scheffer* at 1265. Again, the scientific community is divided over the reliability of polygraph examinations. *Id.* While some studies indicate that polygraphy is reliable and accurate, others have found that the accuracy rate of polygraph tests is only slightly over fifty percent. *Id.* Moreover, there is evidence that polygraph examinees can deliberately provoke certain physiological responses which can obscure accurate polygraph readings. *Id.* n. 6. These doubts and uncertainties about polygraphy led the Supreme Court to conclude that "there is simply no way to know in a particular case whether a polygraph examiner's conclusion is accurate." *Id.* at 1266.

Federal and state courts are also divided over the reliability of polygraph evidence. *Id.* at 1265. Although most federal circuits give the trial courts discretion to admit polygraph related evidence, the Fourth Circuit continues to adhere to the per se rule prohibiting the introduction of any polygraph evidence. *United States v. Sanchez,* 118 F.3d 192, 197 (4th Cir.1997). Most state courts also continue to follow the per se rule. *Scheffer* at 1266. The Second Circuit recently

---

**1.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consider-
ations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R.Evid. 403.

announced that it has not "decided whether polygraphy has reached a sufficient state of reliability to be admissible under Rule 702 of the Federal Rules of Evidence." *United States v. Messina*, 131 F.3d 36, 42 (2nd Cir. 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1546, 140 L.Ed.2d 694 (1998). Even those circuits which are more liberal in their acceptance of polygraph related evidence have expressed reservations about its reliability. The Eleventh Circuit continues to consider polygraphy as "a developing and inexact science" and has noted that polygraph evidence should not be used in all situations where "more proven types of expert testimony are allowed." *United States v. Piccinonna*, 885 F.2d 1529, 1535 (11th Cir.1989).

In addition to doubts about the reliability of polygraph examinations, the court finds that the admission of Defendant's polygraph evidence would likely create a high risk of misleading the jury and thereby unfairly prejudice the Defendant. The admission of the polygraph evidence in this case would cause an over reliance on one item of evidence and supplant the fact-finding function of the jury. Other federal circuits have recognized that juries sometimes grant too much credibility to polygraph examinations. *See Brown v. Darcy*, 783 F.2d 1389, 1391 (9th Cir.1986) *overruled on other grounds by United States v. Cordoba*, 104 F.3d 225 (9th Cir.1997); *United States v. Alexander*, 526 F.2d 161, 168 (8th Cir.1975). The procedures and methods employed in the administration of polygraph tests can give an unwarranted aura of authority to the results of these examinations. *Scheffer* at 1267 (Thomas, J., plurality opinion).[2] In the present case, allowing the introduction of the Defendant's polygraph examination results could mislead the jury to find the Defendant guilty without sufficient independent evidence to support that conviction.

■ Although this court's concerns about the reliability and potential prejudicial effect of polygraph examination results do not justify the adoption of a per se rule against the admission of polygraph evidence, they are sufficient to uphold this court's exercise of discretion to exclude the results of Defendant's polygraph test. The Sixth Circuit has given this court broad discretion to make determinations concerning the admissibility of evidence based on considerations of relevance and materiality. *United States v. Carter*, 969 F.2d 197, 200 (6th Cir.1992). More specifically, the decision of whether to admit polygraph evidence where the *Wolfel* standards have been met lies within the sound discretion of this court. *Blakeney* at 1014. When a trial court has concerns about the reliability and prejudicial effect of polygraph evidence, it is not an abuse of discretion for that court to exclude that evidence. *Poole v. Perini*, 659 F.2d 730, 735 (1981), *cert. denied*, 455 U.S. 910, 102 S.Ct. 1259, 71 L.Ed.2d 450 (1982).

This court does have reasonable concerns about the reliability of Defendant's polygraph examination and the potential prejudicial effect such test results might have on the jury. Although the Defendant's pre-examination agreement with the government does satisfy *Wolfel*'s test for admissibility, it failed to alleviate the concerns of this court. The unreliability concerns, coupled with the fact that the Defendant is young and inexperienced, and was represented at the time by an attorney with very limited experience in criminal law, is cause for the court to exclude the results of the examination. Accordingly, the court chooses to exercise its discretion to exclude the results of Defendant's polygraph examination.

This court has determined that the probative value of the results of Defendant's polygraph examination is minimal and is outweighed by the prejudicial effect that the results would have on the jury. Therefore, the court grants Defendant's motion to exclude the results of his polygraph examination. Accordingly, it is not necessary to address the Defendant's argument that he did not knowingly, intelligently and voluntarily

---

**2.** Although Justice Stevens dissented from the Court's holding in *Scheffer* upholding the Military's categorical rule against the admission of polygraph evidence, he did concede that the introduction of such evidence does create "some risk that 'juries will give excessive weight to the opinion of a polygrapher, clothed as they are in scientific expertise.' "*Scheffer* at 1278 (Stevens, J. dissenting).

waive his right to object to the polygraph evidence at trial.