Kimberly MILLER, Plaintiff,

v.

Officer Chris HEAVEN, as an Officer of
the City of Topeka, Kansas, and as
an Individual, Defendant.

No. 92–4295–SAC.

United States District Court,
D. Kansas.

March 19, 1996.

496

**498**

Lee R. Barnett, Keith E. Renner, Jon E. Thornbrugh, Barnett, Yockers & Renner, P.A., Wakarusa, KS, C. Richard Comfort, Comfort Law Office, Minneapolis, KS, Max A. Eulert, Manhattan, KS, for plaintiff.

Michael S. Greiving, William E. Enright, Scott, Quinlan & Hecht, Topeka, KS, for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

On October 30, 1995, trial in this excessive force/first amendment case commenced. In this § 1983 action, Miller sought to impose liability against Officer Chris Heaven for violation of her first amendment right to free speech and for violation of her fourth amendment right to be free from the use of excessive force. Greatly simplified, on August 5, 1992, Miller was arrested by Officer Bill White.[1] Miller was placed in the back seat of the police car to be transported to jail. Officer White drove the vehicle while Miller and Officer Heaven road in back seat. At trial, Miller testified that Officer Heaven, in response to her questions regarding why she was being arrested,[2] sat on her and repeatedly beat her in the face, causing, *inter alia*, a broken nose. Officer Heaven denied Miller's allegations that he had used excessive force or that he had violated her first amendment right to ask why she was being arrested. Officer Heaven testified that he only used the force reasonably necessary to protect himself, Officer White, Miller and the police car from Miller's obstreperous behavior. Officer Heaven testified that he did sit on Miller to restrain her, but testified that such action was warranted and appropriate under the police training he had received as he had exhausted all of the other less physical means of restraint. Officer White testified

that he did not know how Miller came to be injured in the back seat.

Following the close of evidence, the court denied the plaintiff's motion for judgment as a matter of law. The jury subsequently returned a verdict finding that Officer Heaven did not violate Miller's constitutional rights.

This case comes before the court upon Miller's "Motion for Judgment N.O.V. or in the alternative Request for New Trial" (Dk.132). Miller contends that the jury's verdict was contrary to the weight of evidence presented. Alternatively, Miller requests a new trial.

### Standard for Judgment as a Matter of Law [3] under Fed.R.Civ.P. 50

Fed.R.Civ.P. 50 provides in pertinent part:

(a) Judgment as a Matter of Law.

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

1. Immediately prior to trial, Miller dismissed her claims against Officer Bill White, Officer Heaven's partner on the night that Officer Heaven allegedly beat Miller.

2. Miller testified that she was doing nothing illegal and that she was arrested simply because she did not produce identification in response to Officer White's request. According to Officer Heaven, Officer White and another officer on the scene, Miller, a small white female, was verbally engaging a group of black males as they arrived.

According to the officers, Miller was arrested for her use of racial epithets and other conduct likely to precipitate a fight.

3. The court notes that the terms "directed verdict" and "judgment n.o.v." were replaced in the 1991 amended version of Fed.R.Civ.P. 50 by the phrase "judgment as a matter of law." This change in terminology effected no substantive change. *See Piesco v. Koch*, 12 F.3d 332, 340 (2nd Cir.1993) (citing the 1991 Advisory Committee Note to Amendment of Fed.R.Civ.P. 50).

(b) Renewal of Motion for Judgment After Trial; Alternative Motion for New Trial. Whenever a motion for a judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Such a motion may be renewed by service and filing not later than 10 days after entry of judgment. A motion for a new trial under Rule 59 may be joined with a renewal of the motion for judgment as a matter of law, or a new trial may be requested in the alternative. If a verdict was returned, the court may, in disposing of the renewed motion, allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law.

Judgment as a matter of law is appropriate under Rule 50(b) "only if the evidence, viewed in the light most favorable to the nonmoving party, points 'but one way and is susceptible to no reasonable inferences supporting' the nonmoving party." *Riggs v. Scrivner, Inc.*, 927 F.2d 1146, 1149 (10th Cir.) (*quoting Zimmerman v. First Fed. Sav. & Loan Ass'n*, 848 F.2d 1047, 1051 (10th Cir. 1988)), *cert. denied*, 502 U.S. 867, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991). Judgment as a matter of law is only proper "when the evidence so strongly supports an issue that reasonable minds could not differ." *Zuchel v. City and County of Denver, Colorado*, 997 F.2d 730, 734 (10th Cir.1993) (quoting *Ryder v. City of Topeka*, 814 F.2d 1412, 1418 (10th Cir.1987) (quoting *Delano v. Kitch*, 663 F.2d 990, 1002 (10th Cir.1981) (citations omitted))); *see Goodwin v. Enserch Corp.*, 949 F.2d 1098, 1101 (10th Cir.1991) (the nonmovant's position must be supported by more than a scintilla of evidence). "A reviewing court 'is not permitted to consider the credibility of witnesses in reaching its decision ... nor may a court weigh the evidence or determine where the preponderance of the evidence lies.'" *Zuchel*, 997 F.2d at 734 (quoting *Ryder*, 814 F.2d at 1418) (quoting *Martin v. Unit Rig & Equip. Co.*, 715 F.2d 1434, 1438 (10th Cir. 1983) (citations omitted)).

**Standard for Motion for New Trial**

Fed.R.Civ.P. 59(a) authorizes the court to grant a new trial to all or any of the parties on all or part of the issues "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." A trial court has broad discretion in deciding whether to grant or deny a motion for a new trial. *McDonough Power Equipment, Inc. v. Greenwood* 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984). In considering the motion, the court should "exercise judgment in preference to the automatic reversal for 'error' and ignore errors that do not affect the essential fairness of the trial." *McDonough Power Equipment*, 464 U.S. at 553, 104 S.Ct. at 848. The motion may be granted where the court believes the verdict is against the weight of the evidence or prejudicial error has occurred. *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 637 (10th Cir.1988).

When the issue concerns the verdict being against the weight of the evidence, the trial court in exercise of its discretion reviews the evidence. *Black v. Hiebs Enterprises, Inc.*, 805 F.2d 360, 363 (10th Cir. 1986). The focus is upon whether the evidence is clearly, decidedly, or overwhelmingly against the weight of the evidence. *Continental Cas. Co. v. Southwestern Bell Telephone Co.*, 860 F.2d 970, 972 (10th Cir. 1988), *cert. denied*, 489 U.S. 1079, 109 S.Ct. 1530, 103 L.Ed.2d 836 (1989).

Because of the sanctity attached to jury verdicts, courts do not lightly overturn them. *Mid–West Underground Storage, Inc. v. Porter*, 717 F.2d 493, 502 (10th Cir.1983). In determining whether a new trial is appropriate, the trial court does not sit merely as an additional juror. *de Perez v. Hospital del Maestro*, 910 F.2d 1004, 1006 (1st Cir.1990). It must have more than the belief it would have reached a different verdict, the trial court must " 'feel that the jury quite clearly reached a seriously erroneous result in spite of the clear weight of the evidence.'" *Leichihman v. Pickwick Intern.*, 814 F.2d 1263, 1267 (8th Cir.) (quoting *Leichihman v. Pickwick International, Inc.*,

589 F.Supp. 831, 834 (D.Minn.1984)), *cert. denied,* 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987).

### Exclusion of Polygraph Evidence [4]

As part of the police department's internal affairs' investigation of Miller's excessive force complaints, both Miller and Officer Heaven were given a polygraph examination. Miller apparently "passed" the polygraph examination. Officer Heaven apparently did not. Officer Heaven sought to exclude from evidence "the use of any and all testimony or exhibits related to the use, testing, or results of polygraph examinations taken of both plaintiff" and himself. Relying on the fact that polygraph examinations have traditionally been excluded as (1) unreliable and/or (2) confusing to the jury or supplanting the role of the jury, Officer Heaven sought exclusion of the evidence regarding the polygraph examinations. The polygraph examinations were apparently taken prior to the time the instant lawsuit was filed. Officer Heaven sought to exclude the evidence as unreliable.

Miller made several responses. Extracting the plaintiff's arguments from her briefs:

1. Polygraph examinations are not declared inadmissible under the Federal Rules of Evidence; polygraph examinations should be admitted under Fed.R.Evid. 702.

2. The results of the polygraph examinations should be admitted for purposes of rehabilitation, *i.e.,* attacks on Miller's credibility;

3. The fact that Miller voluntarily submitted to a polygraph examination is relevant to show her state of mind; the fact that Officer Heaven refused to complete the exam is relevant to his state of mind and is an admission against interest.[5]

4. Polygraph examinations are currently more reliable than they were when the courts developed the general rule excluding them from evidence; the trend in federal courts is to allow polygraph examination evidence.

5. The court can give limiting instructions to the jury.

6. Officer Heaven stipulated to the use of the polygraph.[6]

7. The evidence is relevant under Rule 404(b) and for purposes of impeachment.

8. If Officer Heaven challenged the efficacy of the police department's investigation, Miller should be entitled to introduce evidence to show the thoroughness of the investigation.[7]

In evaluating the admissibility of polygraph examinations in their briefs, both of the parties relied exclusively on pre-*Daubert* decisions. The general rules precluding the admission of polygraph examinations were decided under the *Frye*[8]-test. Consequently, it was necessary for the court to evaluate the admissibility of polygraph examinations in light of the Supreme Court's decision in *Daubert.* At a hearing outside the presence of the jury, the court concluded that it was

4. The plaintiff's brief in support of her motion for judgment as a matter of law or for new trial appears to allude to the court's exclusion of this evidence.

5. Although this argument by the plaintiff was intuitively appealing, admitting the evidence even for this limited purpose would necessarily compel introduction of evidence regarding the polygraph examinations and invite speculation by the jury regarding the results of those examinations. This same observation is true regarding the plaintiff's other alternative reasons for admitting evidence of the polygraph examinations.

6. If the plaintiff's characterization of Officer Heaven's decision to take the polygraph examination as a "stipulation" was correct, evidence regarding the polygraph examination would possibly have been admitted. However, at the time

Officer Heaven took the polygraph examinations, he did not stipulate to the admissibility of the results in a subsequent civil lawsuit. Officer Heaven did not "implicitly" agree to the admission of the polygraph results in this case which was apparently filed after the time the polygraph examinations were administered.

7. In *United States v. Hall,* 805 F.2d 1410 (10th Cir.1986), the Tenth Circuit affirmed the district court's decision to admit a detective's testimony regarding the defendant's failure of a polygraph examination for the limited purpose of explaining the detective's failure to conduct a more thorough investigation. In this case, Officer Heaven made no challenge to the thoroughness of the investigation of Miller's complaint.

8. *Frye v. United States,* 54 App.D.C. 46, 293 F. 1013 (1923).

appropriate to exclude evidence concerning the polygraph examinations of both Miller and Heaven.

### Expert Testimony under Rule 702

Rule 702 of the Federal Rules of Evidence states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

■ "A trial judge has broad discretion in determining the competency of an expert witness." *Kloepfer v. Honda Motor Co.,* 898 F.2d 1452, 1458 (10th Cir.1990); *see Broadcort Capital Corp. v. Summa Medical Corp.,* 972 F.2d 1183, 1194–95 (10th Cir.1992) (trial court did not abuse its discretion in finding that witness' general experience, education and training did not qualify him as an expert in the securities area).

■ In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court held that the Federal Rules of Evidence, not *Frye,* provide the standard for admitting expert scientific testimony in a federal trial. In *Frye v. United States,* 54 App. D.C. 46, 47, 293 F. 1013 (1923), the court had developed a "general acceptance" test to determine the admissibility of expert testimony—under the *Frye* rule, expert opinion based on a scientific technique is inadmissible unless the technique is "generally accepted" as reliable in the relevant scientific community. The Supreme Court held that "[n]othing in the text of [Rule 702] establishes "general acceptance as an absolute prerequisite to admissibility." 509 U.S. at 588, 113 S.Ct. at 2794, 125 L.Ed.2d at 480.

That the *Frye* test was displaced by the Rules of Evidence does not mean, however, that the Rules themselves place no limits on the admissibility of purportedly scientific evidence. Nor is the trial judge disabled from screening such evidence. To the contrary, under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.

The primary locus of this obligation is Rule 702, which clearly contemplates some degree of regulation of the subjects and theories about which an expert may testify. "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue" an expert "may testify thereto." The subject of an expert's testimony must be "scientific ... knowledge." The adjective "scientific" implies a grounding in the methods and procedures of science. Similarly, the word "knowledge" connotes more than subjective belief or unsupported speculation. The term "applies to any body of known facts or to any body of ideas inferred from such facts or accepted as truths on good grounds." *Webster's Third New International Dictionary* 1252 (1986). Of course, it would be unreasonable to conclude that the subject of scientific testimony must be "known" to a certainty; arguably, there are no certainties in science ... But, in order to qualify as "scientific knowledge," an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation—*i.e.,* "good grounds," based on what is known. In short, the requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability.

Rule 702 further requires that the evidence or testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." This condition goes primarily to relevance. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." 3 Weinstein & Berger ¶ 702[02], p. 702–18.

509 U.S. at 589–91, 113 S.Ct. at 2794–95, 125 L.Ed.2d at 480–481 (footnotes omitted).

Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a

preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

509 U.S. at 592–93, 113 S.Ct. at 2796, 125 L.Ed.2d at 482 (footnotes omitted).

■■■■ In deciding whether an expert's testimony is scientific knowledge that will assist the trier of fact to understand or determine a fact in issue, the district courts may consider any of the following non-exclusive list of factors:

(1) Is the theory or technique capable of being (and has been) tested? ("The criterion of scientific status of a theory is its falsifiability, or refutability, or testability.")

(2) Whether the theory or technique has been subjected to peer review and publication?

(3) In the case of a particular scientific technique, the court ordinarily should consider the known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation.

(4) Finally, "general acceptance" can yet have a bearing on the inquiry. "A 'reliability assessment does not require, although it does permit, explicit identification of a relevant scientific community and express determination of a particular degree of acceptance within that community.'" 509 U.S. at 594, 113 S.Ct. at 2797, 125 L.Ed.2d at 483 (quoting *United States v. Downing* 753 F.2d at 1238). "Widespread acceptance can be an important factor in ruling particular evidence admissible, and a 'known technique that has been able to attract only minimal support within the community,' *Downing,* supra, at 1238, may properly be viewed with skepticism."

509 U.S. at 594, 113 S.Ct. at 2797, 125 L.Ed.2d at 483. The Supreme Court emphasized that the inquiry envisioned by Rule 702 is a flexible one. 509 U.S. at 594–95, 113 S.Ct. at 2797–98, 125 L.Ed.2d at 483–484.

■■■■ "[T]he 'touchstone' of admissibility is helpfulness to the trier of fact." *Werth*

*v. Makita Elec. Works, Ltd.,* 950 F.2d 643, 648 (10th Cir.1991). "Moreover, 'a lack of specialization does not affect the admissibility of the [expert's] opinion but only its weight,' *Wheeler v. John Deere Co.,* 935 F.2d 1090, 1100 (10th Cir.1991), although 'a[n expert] must have skill in the matter to which the subject relates.' *Id.* (quoting *Petition of Central Kansas Elec. Co-op, Inc.,* 224 Kan. 308, 582 P.2d 228, 236 (1978)). "An expert must, however, stay within the reasonable confines of his subject area and cannot render expert opinions of an entirely different field or discipline." *Wheeler,* 935 F.2d at 1100.

■■■■ An expert, relying upon his experience and knowledge of causation factors, may express an opinion which draws a rational conclusion as to causation. *Orth v. Emerson Elec. Co., White–Rodgers Div.,* 980 F.2d 632, 637 (10th Cir.1992). "Absolute certainty is not required." *Id.*

### Tenth Circuit Precedent

In *Palmer v. City of Monticello,* 31 F.3d 1499 (10th Cir.1994),[9] the Tenth Circuit discussed polygraph examinations:

The general rule is that polygraph results are inadmissible. *See United States v. Whitt,* 718 F.2d 1494, 1501 (10th Cir. 1983); *United States v. Soundingsides,* 820 F.2d 1232 at 1241–42 (10th Cir.1987). If it is relevant that the polygraph examination was performed, as a fact in and of itself, regardless of what the results were, then that fact may be admissible as an operative fact. However the trial court must still determine whether to admit or exclude the evidence on grounds of undue prejudice. *See Brown v. Darcy,* 783 F.2d 1389, at 1397 & n. 14 (9th Cir.1986). "[A] trial court will rarely abuse its discretion by refusing to admit [polygraph] evidence, even for [such] a limited purpose and under limited conditions." *United States v. Falsia,* 724 F.2d 1339, 1342 (9th Cir.1983). Moreover, even if polygraph evidence would be admissible as an operative fact, the trial court may exclude it if the manner

---

9. *Palmer* was decided after the Supreme Court's decision in *Daubert.* The Tenth Circuit's decision does not address the impact, if any, of the Supreme Court's decision in *Daubert.*

of the introduction of the evidence would allow or encourage the jury to draw improper inferences.[n. 8] *See Barnier v. Szentmiklosi,* 810 F.2d 594, 596–97 (6th Cir.1987).

> n. 8 We agree with Palmer's contention that the jury, possessed of the knowledge that polygraphs had been performed on both Olsen and Palmer, would have been able to figure out that Olsen had "passed" while Palmer had "failed." See Appellee's Brief at 32. That would have been an end run around the general inadmissibility of polygraph results which could have interfered with the jury's resolution of the crucial question whether Palmer falsified the ticket.
>
> This case simply is not like cases in which litigants offer to prove that they took, agreed to take, or refused to take polygraphs to demonstrate their good faith (or lack thereof), because in those cases and taking, offering, or refusal to take the tests carried independent significance. *See, e.g., Underwood v. Colonial Penn Ins. Co.,* 888 F.2d 588, 590–91 (8th Cir.1989) (refusal to take test admissible); *Murphy v. Cincinnati Ins. Co.,* 772 F.2d 273, 277 (6th Cir.1985) (willingness to submit to test admissible); *But see Wolfel v. Holbrook,* 823 F.2d 970, 974–75 (6th Cir. 1987) (willingness to submit to test not automatically admissible, refusal to submit to test not admissible at all), *cert. denied,* 484 U.S. 1069, 108 S.Ct. 1035, 98 L.Ed.2d 999 (1988).

31 F.3d at 1506. *See United States v. Tsosie,* No. 92–2103, 1993 WL 34780 (10th Cir. Feb. 8, 1993) (polygraphs are not admissible to show truthfulness) (unpublished).

### Cases from other Circuits Decided Since Daubert

Several recent cases have discussed the issue of whether the general rule excluding evidence of polygraph examinations survives *Daubert.* The results are mixed. *Compare United States v. Posado,* 57 F.3d 428 (5th Cir.1995) ("[T]he rationale underlying this circuit's per se rule against admitting polygraph evidence did not survive *Daubert."*); *Ulmer v. State Farm Fire & Casualty Co.,* 897 F.Supp. 299 (W.D.La.1995) (finding evidence concerning the administration and results of polygraph results relevant under Federal Rules of Evidence); *with United States v. Kwong,* 69 F.3d 663, 667–669 (2nd

Cir.1995) (finding that district court properly excluded polygraph results under Rule 403 as questions posed to defendant during polygraph "were inherently ambiguous no matter how they were answered.");[10] *United States v. Sherlin,* 67 F.3d 1208, 1216–17 (6th Cir. 1995) ("The Sixth Circuit has consistently recognized that in the absence of a prior agreement between the parties that the results of an examination would be admissible, the probative value of the polygraph is substantially less because the defendant would have no adverse interest at stake in the polygraph."), *cert. denied,* —— U.S. ——, 116 S.Ct. 795, 133 L.Ed.2d 744 (1996); *United States v. Lech,* 1995 WL 441976 (S.D.N.Y. July 26, 1995) (polygraph results properly excluded under Rule 403; "the basis for the Second Circuit's reluctance to admit polygraph evidence is not based upon its view that polygraph exams are not generally accepted in the scientific community. Instead, the Second Circuit's concern about polygraph test centers upon the methodology employed by the polygraph examiner.").

Based upon the plaintiff's proffer of evidence, the court concluded that it was inappropriate to admit evidence of the polygraph examination for two primary reasons.[11] First, the court concluded the plaintiff made an insufficient showing under the criteria of *Daubert.* Consequently, the court excluded the evidence concerning the polygraph examinations under Rule 702. The polygraph examiner, although confident that polygraph examinations are generally trustworthy and that the results of his examinations of Miller and Officer Heaven were reliable, was unable to demonstrate to the court's satisfaction that the requirements of Rule 702 were satisfied. The polygraph examiner, although able to discuss the reliability of polygraph examinations in general terms, was unable to articulate with sufficient precision the reasons for its reliability and the manner with which the

---

**10.** The Second Circuit noted "however, that the 'legal Pandora's box' which the Fifth Circuit opened in *United States v. Posado,* 57 F.3d 428, 436 (5th Cir.1995), is not yet agape in this Circuit. The record before us simply does not provide the proper opportunity to explore the validity of polygraph evidence under Rule 702." 69 F.3d at 668–69.

**11.** Based upon the other evidence presented, evidence that Miller and Officer Heaven had each taken a polygraph examination was not relevant for the other reasons suggested by the plaintiff.

polygraph examinations such as those he performed on Miller and Officer Heaven have been proven reliable. In the alternative, the court excluded the evidence under Fed. R.Evid. 403. In light of the court's concern about whether it was appropriate to admit the polygraph examination under Rule 702, and in the absence of a prior agreement between the parties concerning the admissibility of the polygraph examinations, the court concluded that in this case the probative value of the polygraph evidence was substantially outweighed by the danger of unfair prejudice. *See Sherlin,* 67 F.3d at 1216–17; *Palmer,* 31 F.3d at 1506. In retrospect the court concludes that its decision to exclude evidence of both polygraph examinations was correct and that the exclusion of that evidence did not deprive Miller of a fair trial.

### Analysis of Plaintiff's Other Arguments

Because no other person, including Officer White, observed the events occurring in the back seat of the police car on August 5, 1992, the issue of whether Officer Heaven used excessive force or violated Miller's first amendment right to ask why she was being arrested turned largely on the jury's assessment of the credibility of Miller and Officer Heaven. Despite Officer Heaven's attempt to demonstrate that it was possible that Miller had a broken nose before she was placed in the back of the police car, the evidence generally suggested that she suffered the injuries to her face while she was being transported to jail. Although Miller testified that the injuries she suffered were the result of Officer Heaven's use of excessive force, the jury could reasonably have concluded that Miller was inadvertently injured by Officer Heaven in his attempt to restrain her. The jury could also have reasonably concluded that Officer Heaven's use of force was reasonable to restrain a combative prisoner. In either event, Officer Heaven would not be liable to Miller under § 1983.

In assessing the credibility of the witnesses, it is apparent from their verdict that the jury did not find Miller's recollection of the events on August 5, 1992, to be completely accurate. The court believes that such an assessment was within the jury's providence, as the evidence was not such that only one reasonable conclusion could be reached. In assessing Miller's credibility, the jury could have found her version of the entire evening to be an unlikely account of the events as they actually transpired. For example, Miller testified that she was arrested simply because she did not produce any identification when asked to do so by the police.[12] The jury could have reasonably chosen to believe the testimony of the police officers on the scene who indicated that Miller was arrested to prevent a fight. If they chose not to believe Miller's testimony, but instead chose to believe that she was single-handedly verbally challenging a large contingent of black males with racial epithets, the jury could reasonably have believed that Miller was not the docile passenger she claimed to have been while en route to the jail. Such assessments of credibility were essential to determining which person's testimony completely, accurately, and objectively recounted the events as they actually occurred.

In sum, the court finds that the jury's verdict was a reasonable interpretation of the evidence presented in this trial. The court also finds that Miller received a fair trial and that nothing argued by her demonstrates that she was prejudiced by any error warranting a new trial.

IT IS THEREFORE ORDERED that Miller's "Motion for Judgment N.O.V. or in the alternative Request for New Trial" (Dk. 132) is denied.

---

12. Failure to identify oneself to a law enforcement officer is not a valid basis for an arrest. *See State v. McKeown,* 249 Kan. 506, 509, 819 P.2d 644 (1991) ("An officer who does not have reasonable suspicion to justify a *Terry* stop may, however, approach an individual on the street for investigative purposes. (Citations omitted). The officer can ask the individual's name and request identification but cannot force the individual to answer. The individual is free to leave.").